IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BRIAN W. COOK,
     Plaintiff,

vs.

                            Case No.: 3:16cv568/TKW/EMT

JULIE JONES, in her individual
capacity as Secretary of the Florida
Department of Corrections;
MARK S. INCH, in his official capacity
as Secretary of the Florida Department
of Corrections[1]; and DOUG SANDERS,
     Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Brian W. Cook, an inmate of the Florida Department of Corrections

("FDOC"), proceeds pro se and in forma pauperis in this action brought under 42

U.S.C. § 1983.   Presently before the court is Defendants' Motion for  Summary

Judgment with a Memorandum of Law and with supporting materials (ECF No. 61).

Plaintiff has filed a response to the motion for summary judgment along with

evidentiary materials (ECF No. 63).   In response to the court's order, both parties

---

[1]    Because Julie L. Jones is no longer the Secretary of the Florida Department of Corrections, the parties have stipulated that, to the extent she is sued in her Official Capacity as Secretary of the Florida Department of Corrections, Mark S. Inch is substituted in as the current Secretary of the Florida Department of Corrections pursuant to Fed. R. Civ. P. 25(d).

have filed supplemental memoranda regarding the exhaustion issue (ECF Nos. 64, 67).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)(C); Fed. R. Civ. P. 72(b). After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that Defendants' motion for summary judgment should be granted.

## I.    BACKGROUND

At all times relevant to this action, Plaintiff was incarcerated at Century Correctional Institution ("CCI") (*see* ECF No. 1), though Plaintiff is now held at Zephyrhills Correctional Institution. Plaintiff claims violations of his rights under the First Amendment, under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and under the Equal Protection Clause of the Fourteenth Amendment. As relief, he seeks nominal damages and injunctive relief to have a prayer mat issued to him.

Plaintiff, who identifies himself as a practicing Buddhist, claims that he was denied a prayer and meditation mat that had been purchased by his son and delivered to the institution (*id.* at 11).[2]    Plaintiff describes the mat as ¢-inch thick, 74-inches long, and 24-inches wide (*id.*).    He alleges that he ordered the mat when, on or about January 11, 2016, he was authorized by the FDOC to receive and use it (*id.*).    After he filed requests and grievances asking whether and when the package had been delivered to the institution, Plaintiff was eventually informed by the assistant warden on May 6, 2016, that the mat, though received, was determined to be too long and was therefore disallowed on grounds that it posed a security risk (*id.* at 11–12).    The assistant warden also stated that, under the chaplain's schedule, the prayer mat was not required for Buddhist religious practice (*id.* at 12).    Plaintiff filed further grievances with the warden, emphasizing that when the mat was originally requested and approved, its dimensions were explicitly provided, and that many Muslim prisoners had been allowed prayer rugs for similar purposes.    The warden denied the grievance, stating that the prayer mat Plaintiff requested was larger than the Muslim prayer rugs, and repeating that the Buddhist faith does not require the prayer

---

[2] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

mat for its religious practices (*id.* at 13).   Plaintiff further challenged the decision against him, and he also requested that the mat be retained during the process; although he was informed that the mat was being stored in an office, Plaintiff eventually learned that the mat apparently had either been lost or "disposed of" (ECF No. 63 at 3–4).

As a practicing Buddhist, Plaintiff asserts that a central facet of his spiritual enlightenment is the practice of yoga (*id.* at 10, 22–23).   As Plaintiff explains, yoga consists of religious exercises, both mental and physical, that are performed on a ritualistic and regular basis (*id.*).   These yoga exercises, Plaintiff states, are conducted with a prayer and meditation mat (*id.*).   Plaintiff further states:

> These mats have been used in the practice of Buddhism for thousands of years, which began with the use of animal skins as a means of the practice.   Use of these mats is meant to afford the Plaintiff a separate and distinct difference from the surroundings around him or of the ground so that *sangha* can be achieved to reach higher stages of spiritual development in the prayer or meditation.

> Use of a prayer and meditation mat is but one essential component of achieving *sangha* or to achieve a higher spiritual level as the mat assists in separating ones [sic] physical touch and feeling from the prison or physical surroundings and assists in achieving a part of serenity in prayer and in meditation.   It is essential to Yoga.

(ECF No. 1 at 15, ¶¶ 44–45).

In response to Defendants' summary judgment motion, Plaintiff also states that he practices or seeks a deep meditation called "Samadhi," which involves a yoga sequence alternating between standing and laying (ECF No. 63 at 23). Plaintiff suggests that to engage in this practice without a mat would expose him to the contaminated floor in his cell. Plaintiff speaks of "common sense hygiene standards" and the fact that in 2016 he contracted cellulitis in his knee "that was introduced in a callus caused by kneeling on the floor on a blanket" (*id.* at 12, 23–24).

Defendants suggest that in the past Plaintiff has used—and henceforth could continue to use—the blanket on his bed as a substitute for the mat. In response, Plaintiff indicates that using his blanket would only result in it becoming contaminated as well, and he also states that he would be found in violation of prison regulations if he were discovered with his blanket removed from his bed (*id.* at 12–13, 23–24).[3]

---

[3] While Plaintiff cites to Rule 33-601.239(2) of the Florida Administrative Code as requiring inmates to "make up" their beds in a "military manner" and keep it that way at all times, this section of the code appears to pertain to those inmates enrolled in the Basic Training Program, which is essentially composed of youthful offenders. *See* Fla. Admin. Code R. 33-601.231. Nonetheless, Plaintiff also states that officers consistently inspect inmate cells and that he would likely face disciplinary action if his bed were not properly made (ECF No. 63 at 12). Plaintiff also relates that, for a time, he was in possession of a fragment of a blanket which he used for yoga, but it was confiscated (*id.* at 12–13).

Plaintiff subsequently learned that Defendant Robert "Doug" Sanders, the Chaplain at CCI, had actually approved Plaintiff's use of a prayer mat. More accurately, the individual who served as prison chaplain before Defendant Sanders had approved of Plaintiff's possession of a yoga mat; Sanders merely confirmed that approval during his review of this lawsuit (ECF No. 61-2 at 1). Defendant Sanders also found that, while the mat had been approved "from a religious perspective," it was rejected out of concerns for prison security (ECF No. 61-2 at 1–2, ¶¶ 3, 5). As stated in an affidavit by Carl Wesley Kirkland, Jr., an administrator in the FDOC, "upon [the mat's] arrival at Century Correctional Institution, it appears that Assistant Warden Johnathan Hutchins and Assistant Warden James White physically inspected the mat and determined that due to the physical characteristics of the mat, the mat would cause several issues with security" (ECF No. 61-7 at 3, ¶4). In light of this evidence, Plaintiff acknowledges Defendant Sanders' lack of involvement in the withholding of Plaintiff's prayer mat, and he therefore agrees to the dismissal of Defendant Sanders from this action (ECF No. 63 at 2, 9–10).

## II.    SUMMARY JUDGMENT STANDARDS

In order to prevail on a motion for summary judgment, the moving party must show that the nonmoving party has no evidence to support his or her case or present affirmative evidence that the nonmoving party will be unable to prove his or her case at trial. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). If the moving party successfully negates an essential element of the nonmoving party's case, the burden shifts to the nonmoving party to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*, 477 U.S. at 248. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* The nonmoving party must show more than the existence of a "metaphysical doubt" regarding the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Speculation or conjecture from a party cannot create a genuine issue of material fact. *See* Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005). "A mere scintilla of evidence in support of the

nonmoving party will not suffice to overcome a motion for summary judgment."
Young v. City of Palm Bay, Fla., 358 F.3d 859, 860 (11th Cir. 2004); *see also*
Celotex Corp., 477 U.S. at 324. The nonmoving party must either point to evidence
in the record or present additional evidence sufficient to withstand a directed verdict
motion at trial based on the alleged evidentiary deficiency. *See* Celotex Corp.,
*supra*; Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997) (Rule 56 requires the
nonmoving party to go beyond the pleadings and by his or her own affidavits, or by
the depositions, documents, affidavits or declarations, admissions, interrogatory
answers or other materials on file designate specific facts showing that there is a
genuine issue for trial); Hammer v. Slater, 20 F.3d 1137 (11th Cir. 1994). If a party
fails to properly support an assertion of fact or fails to properly address another
party's assertion of fact as required by Rule 56(c), the court will consider the fact
undisputed for purposes of the motion for summary judgment, or grant summary
judgment if the moving party's motion and supporting materials—including the facts
considered undisputed—show that the moving party is entitled to it. *See* Fed. R.
Civ. P. 56(e)(2, 3) (2010).

Evidence presented by the nonmoving party in opposition to the motion for
summary judgment, and all reasonable factual inferences arising from it, must be

viewed in the light most favorable to him or her. *See* <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 157 (1970); <u>Jones v. Cannon</u>, 174 F.3d 1271, 1282 (11th Cir. 1999). Nonetheless, the nonmoving party still bears the burden of coming forward with sufficient evidence of every element that he or she must prove. *See* <u>Celotex Corp.</u>, 477 U.S. at 317. A motion for summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>Celotex Corp.</u>, 477 U.S. at 322.

## III. DISCUSSION

### A. Exhaustion of Claims

As an initial matter, one avenue by which Defendants seek dismissal of the complaint is the contention that Plaintiff, as an inmate in the Florida Department of Corrections, failed to exhaust his available administrative remedies prior to initiating this lawsuit (ECF No. 61 at 7–19). Defendants do not claim that Plaintiff failed to exhaust his available grievances within the prison system. Rather, Defendants assert that Plaintiff failed to file a Petition to Initiate Rule Making ("PIRM") pursuant to the Florida Administrative Procedures Act, Florida Statutes, Section 120.54. This statute provides an apparatus by which an individual may petition an agency to

"adopt, amend or repeal" an agency rule.  Fla. Stat. § 120.54(7)(a).  Counsel's position is that, in addition to the ordinary prison grievance process, Plaintiff was required to pursue the PIRM process in order to achieve exhaustion of all his available remedies.

However, as Defendants essentially acknowledge, exhaustion of the PIRM procedure, by its nature, is necessary only when the individual is challenging an administrative rule or procedure.   Plaintiff steadfastly asserts that he is not challenging any rule or procedure; he is simply claiming that the denial of his prayer mat under the rule violated his civil rights. The court's own review of the rule ostensibly in question, Rule 33-602.201(16) of the Florida Administrative Code, sets out procedures for the evaluation of religious items and their importance to the inmate's religious practices, as well as issues of prison security and order.   The court agrees that Plaintiff, as particularly evidenced by his complaint, does not seek to change the rule, but rather to simply have his prayer mat deemed appropriate for him to possess.   Neither do Defendants identify any particular rule that Plaintiff even inherently seeks to alter or repeal as a function of the complaint.   As will be seen in the analysis that follows, this case does not turn on whether any rule is unconstitutional, but simply whether the denial of Plaintiff's mat was

unconstitutional.   As well, Plaintiff's measure of relief for prevailing on his claim would be the issuance of his mat, not any change to the rules of the FDOC.   Thus, even if the court were to find that exhaustion of the PIRM process were a necessary precursor to a challenge to FDOC rules (and the court makes no such finding here), no rule challenge is sought in this case.   Defendants' argument is therefore unavailing, and accordingly the court will turn to the merits of Plaintiff's claims.

B.     RLUIPA and First Amendment Claims

Plaintiff's claims center upon his First Amendment rights to the exercise of his religious beliefs as well as The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-1 through § 2000cc-5.   "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974); Lawson v. Singletary, 85 F.3d 502, 509 (11th Cir. 1996).   A prisoner's right to exercise his religion is not absolute; it is only required that he be accorded a reasonable opportunity to pursue the practices of his religion.   Cruz v. Beto, 405 U.S. 319, 322 (1972) (per curiam).   Thus, while inmates maintain a constitutional right to freely exercise their sincerely held religious beliefs, this right is subject to prison authorities' interests in maintaining

safety and order.   <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 345 (1987);   <u>Turner v. Safley</u>, 482 U.S. 78 (1987); <u>Cruz</u>, 405 U.S. at 319.

RLUIPA was created in part to "provide greater protection for religious exercise than is available under the First Amendment."   <u>Holt v. Hobbs</u>, 574 U.S. 352, 135 S. Ct. 853, 859–60, 190 L. Ed. 2d 747 (2015).   RLUIPA provides the following standard for review:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person . . . . is in furtherance of a compelling governmental interest[ ] and . . . is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

To establish a prima facie case under RLUIPA, a plaintiff bears the burden of demonstrating (1) that he was engaged or intended to engage in a religious practice or exercise grounded upon a sincerely held religious belief, and (2) that the government's action or policy substantially burdened that exercise.  *See* <u>Holt</u>, 135 S. Ct. at 862; <u>Smith v. Allen</u>, 502 F.3d 1255, 1276 (11th Cir. 2007), *abrogated on other grounds*, <u>Sossamon v. Texas</u>, 563 U.S. 277 (2011).   If the plaintiff successfully carries this burden, the government then bears the burden of showing

that its action or policy (1) furthers a compelling governmental interest and (2) is the least restrictive means of furthering that interest.    Holt, 135 S. Ct. at 863. Conversely, if the plaintiff fails to present evidence to establish a prima facie case, the court need not inquire into whether the governmental interest at stake was compelling.    *See* Smith, 502 F.3d at 1276, 1278; Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1228 (11th Cir. 2004).

A "substantial burden" is defined as more than an inconvenience or an incidental effect that is imposed on one's religious exercise.    Midrash, 366 F.3d at 1227.    Rather, it is "akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly.    Thus, a substantial burden can result from pressure that tends to force adherents to forego religious precepts or from pressure that mandates religious conduct."    *Id.; see also* Thomas v. Review Bd. of Indiana Employment Sec. Div., 450 U.S. 707, 718 (1981) (describing a substantial burden as "substantial pressure on an adherent to modify his behavior and to violate his beliefs"); Lyng v. Northwest Indian Cemetery Protective Ass'n, 485 U.S. 439, 450 (1988) (indicating that, to constitute a substantial burden, the government action must do more than make it more difficult to practice one's religion, it should coerce individuals into acting contrary to their religious beliefs");

Adkins v. Kaspar, 393 F.3d 559, 569–70 (5th Cir. 2004) (explaining that a substantial burden "pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs); San Jose Christian Coll. v. City of Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004) (defining substantial burden as an "oppressive" and "significantly great restriction or onus upon [religious] exercise"); Civil Liberties for Urban Believers v. City of Chicago, 342 F.3d 752, 761 (7th Cir. 2003) (holding that a substantial burden "necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable").

Importantly, more is needed than the inmate's own statements to establish that one's religious practice is substantially burdened. Without evidence from outside, authoritative sources regarding the practices of a particular religion, a substantial burden cannot be proven. Smith v. Allen, 502 F.3d at 1277–80; *see also* Smith v. Governor for Alabama, 562 F. App'x 806, 813 (11th Cir. 2014); Gelford v. Frank, 310 F. App'x 887, 888 (7th Cir. 2008) (affirming denial of inmates' claim for runes and other divination tools for the practice of Wicca on grounds that there was no formidable evidence of a substantial burden, only the inmates' "unreasoned say-so") (citing Borzych v. Frank, 439 F.3d 388, 390 (7th Cir. 2006)).

Case 3:16-cv-00568-TKW-EMT    Document 83    Filed 11/22/19    Page 15 of 27

<u>Smith v. Allen</u> provides significant guidance to this court's analysis of the case at bar.  The plaintiff in <u>Smith</u>, also a prisoner, sought to possess a small quartz crystal in keeping with his practice of Odinism.   Reviewing the materials relevant to the principles of Odanism, the prison chaplain found no evidence of the need for a crystal in practicing the religion, and therefore the use of the crystal was denied. 502 F.3d at 1277.   The Eleventh Circuit agreed, stating:

> In challenging that decision on appeal, Smith has presented no evidence to demonstrate that a small quartz crystal was fundamental to his practice of Odinism, such that the denial of the crystal effectuated any more than an inconvenience on his religious exercise.   Indeed, Smith has failed to establish the relevance of the crystal to his practice of Odinism, as he was obligated to do in order to demonstrate that the denial of that item would significantly hamper his religious observance. Smith's request states only that the crystal was "essential" because it "allows communication with the netherworld."   Similarly, the sources on Odinsim that were submitted by Smith stated, in rather general terms, that "[q]uartz crystals are used in shamanism around the world," that they are used in many prehistoric religions, such as "Old world alchemy, witchcraft, and magic," and that they are "still in use in many traditional societies."   There is no mention in these third party sources of Odinism, nor is there any indication that a small, quartz crystal is necessary to observe the rites of Odinism.
>
> In short, neither Smith's request, nor the outside sources that he submitted in connection with it, demonstrate the need for a quartz crystal in order to practice Odinism.   While it is true that courts are not to inquire into the centrality of a particular religious tenet in undertaking the substantial burden analysis, at a minimum the substantial burden test requires that a RLUIPA plaintiff demonstrate

that the government's denial of a particular religious item or observance
was more than an inconvenience to one's religious practice.

*Id.* at 1278 (citations and quotations omitted).   Consequently, the court found that the plaintiff had at best shown that the denial of the crystal amounted to an incidental burden, and therefore the plaintiff had failed to establish a prima facie case that his practice of his religion was substantially burdened.   *Id.* at 1279.   Similarly, the court denied the plaintiff's other claims regarding the denial of a designated area of worship and the denial of a small fire in a 9" by 9" pit instead of the candle he was provided, because the plaintiff failed to provide evidence from any outside sources to establish that either was necessary to the practice of his religion.   *Id.* at 1279–80; *see also* <u>Muhammad v. Sapp</u>, 388 F. App'x 892, 896 (11th Cir. 2010) (finding no substantial burden with regard to Muslim inmate's not receiving a Qibla compass because no evidence was proffered to establish that the compass was fundamental to his practice of Islam); <u>Adams v. Mosley</u>, No. 2:05CV352-MHT, 2008 WL 4369246, at *11 (M.D. Ala. Sept. 25, 2008) (same with regard to inmate seeking to use tobacco, instead of an herbal substitute that was supplied, for use in the practice of his Native American religion); <u>Avila v. McDonough</u>, No. 3:05CV280/LAC/EMT, 2007 WL 2480246, at *7 (N.D. Fla. Aug. 30, 2007) (same with regard to inmate's request for specific beads in the practice of his Santerian faith when other types of

beads were allowed to him); <u>Krieger v. Brown</u>, No. 5:08-CT-3090-FL, 2010 WL 4026090, at *5 (E.D.N.C. Oct. 13, 2010) (same with regard to denial of an outdoor worship circle for an inmate's practice of Asatru).

In the case at bar, Defendants do not contest that Plaintiff's Buddhist beliefs are sincerely held.  Rather, they assert that, pursuant to the second prong of the standard for establishing a prima facie case under RLUIPA, the denial of Plaintiff's prayer mat did not impose a substantial burden on the exercise of his beliefs.  Thus, their assertion is that Plaintiff has not shown that a prayer mat is a fundamental component of his Buddhist practices or beliefs such that the denial of the mat forced him to forego his religious practice(s).

As discussed above, to establish a substantial burden, Plaintiff must show that the denial of his prayer mat did not just amount to an inconvenience or a simple hindrance in the exercise of his beliefs, he must show that the denial caused him to violate his beliefs, to forego a fundamental religious tenet, or to render the performance of a religious exercise essentially impracticable.  Moreover, as provided in <u>Smith v. Allen</u>, *supra*, and other cases cited above, evidence from external, authoritative sources is necessary to establish the existence of a substantial burden.

Although Plaintiff himself states that a prayer mat has been historically or traditionally used in the Buddhist religion, he provides no external, authoritative evidence to establish the importance of its use.   Plaintiff therefore fails to meet the standard of Smith v. Allen.

Moreover, Plaintiff's own assertions fail to establish that the disallowance of the prayer mat amounted to a substantial burden.   Plaintiff describes the purpose of the mat as providing those who use it with an increased feeling of separateness from the world by helping to separate their sense of physical touch from their surroundings, which thereby helps them to achieve a higher spiritual level of yoga or meditation.   While this description may speak to the *utility* of the mat, it does not attest to the *necessity* of one.   Plaintiff does not definitively state that he cannot meditate or otherwise engage in his Buddhist practice without the mat, only that it makes his practice more difficult or inconvenient.   In fact, Plaintiff's response to Defendants' summary judgment motion speaks more of his concerns with hygiene—for having to position himself directly on the floor—than of any other concern (ECF No. 63 at 12–13, 23–24, 28).   That Plaintiff's religious practice is made more onerous or cumbersome is simply insufficient to sustain a RLUIPA

claim.   Plaintiff does not demonstrate that the denial of his prayer mat forced him to violate or abandon his religious beliefs.[4]

Because Plaintiff has failed to establish a substantial burden on the practice of his Buddhist faith, there is no need to proceed further in the evaluation into whether Defendants' institutional interests were compelling.   *See* <u>Smith</u>, <u>Midrash</u>, *supra*. Accordingly, Plaintiff's claim under RLUIPA should be dismissed.   Likewise, Plaintiff's First Amendment claims should be dismissed because RLUIPA provides greater protection over religious exercise than does the First Amendment, and therefore "[i]f a prison's regulation passes muster under RLUIPA . . . it will perforce satisfy the requirements of the First Amendment."   <u>Smith</u>, 502 F.3d at 1264 n.5; *see also* <u>Hoever v. Belleis</u>, 703 F. App'x 908, 912 (11th Cir. 2017).

C.     Equal Protection Claim

---

[4]     In a different factual context, the Eleventh Circuit decided a case regarding zoning regulations that would force relocation of a church and require its congregants, some of whom were ill or old, to walk farther to attend services.   In holding against the congregants' RLUIPA claim, the court stated:

> While we certainly sympathize with those congregants who endure Floridian heat and humidity to walk to services, the burden of walking a few extra blocks, made greater by Mother Nature's occasional incorrigibility, is not "substantial" within the meaning of RLUIPA.

<u>Midrash</u>, 366 F.3d at 1228.   The case thus underscores the fact that quite onerous situations that clearly make a religious practice more difficult still do not amount to a substantial burden of a religious practice under RLUIPA.

Plaintiff's last claim is that disallowance of the prayer mat amounted to a violation of his right to equal protection of the law.   The Equal Protection Clause of the Fourteenth Amendment requires that the government treat similarly situated people alike.   City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).   To establish an equal protection violation in the prison context, an inmate must allege: "(1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest . . . ."   Jones v. Ray, 279 F.3d 944, 946–47 (11th Cir. 2001) (internal quotations omitted).   Thus, in order to assert a viable equal protection claim, a plaintiff must first make a threshold showing that he was treated differently from others who were similarly situated to him.   *See* Nordlinger v. Hahn, 505 U.S. 1 (1992); Hendking v. Smith, 781 F.2d 850 (11th Cir. 1986).   The plaintiff must also allege the defendant acted with the intent to discriminate against him.   *See*   McClesky v. Kemp, 481 U.S. 279, 292 (1987); E & T Realty v. Strickland, 830 F.2d 1107, 1113 (11th Cir. 1987).   Conclusory allegations or assertions of personal belief of disparate treatment or discriminatory intent are insufficient.   GJR Inv., Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1367–68 (11th Cir. 1998); Coon v. Ga. Pac. Corp., 829 F.2d 1563, 1569 (11th Cir. 1987).

The Equal Protection Clause also is implicated in "class of one" claims. Campbell v. Rainbow City, Ala., 434 F.3d 1306, 1314 (11th Cir. 2006). A "class of one" equal protection claim does not allege discrimination against a protected class but alleges the plaintiff "'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Griffin Indus. v. Irvin, 496 F.3d 1189, 1202 (11th Cir. 2007) (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). The same strict "similarly situated" standard applies whether an equal protection claim is brought under a "class of one" theory or a traditional theory of unlawful discrimination. Id. at 1204–05.

Plaintiff contends the basis for the denial of his prayer mat was discriminatory because Muslim prisoners are allowed to possess prayer rugs and Jewish prisoners are allowed to possess small leather boxes called "Teffillin," which contain long leather straps, as well as long scarves. While Plaintiff's allegations may seem to suggest differential treatment between prisoners of the Muslim and Jewish faiths and those of the Buddhist faith, Plaintiff has not shown that followers of the three denominations are similarly situated with respect to the religious items at issue. Plaintiff does not state, for instance, whether the items at issue are central to the tenets of each faith such that denial of the items would amount to a substantial burden

on religious practices.   Notably, FDOC rules identify certain religious property that is automatically allowed in the absence of a particular security concern.   Among those items are Muslim prayer mats, Jewish shawls and Teffilin, and a Buddhist "Zafu," which is a meditation cushion. [5]   *See* Fla. Admin. Code R. 33-602.201(16)(a), (c), (d).   One can reasonably extrapolate from that fact that the FDOC considers those items fundamental to the practices of the Muslim, Jewish, and Buddhist faiths.[6]   Plaintiff has wholly failed to allege, much less show, that the requested mat falls within that category.[7]

---

[5] In certain instances, however, there are restrictions on the size of the those items.   *See* Fla. Admin. Code R. 33-602.201(16)(c).

[6] It should be noted that, under FDOC rules, those religious items for which a presumption of allowability is not established may nonetheless be allowed if found to be germane to the tenets of the inmate's religion and deemed not to present a specific threat to institutional security and order.   *See* Fla. Admin. Code R. 33-602.201(16)(h).

[7] Had he done so, he likely would have prevailed on his First Amendment claim, which would have mooted his equal protection argument.   Indeed,"[i]f a law passes muster under the First Amendment it is also likely to be upheld under the Equal Protection clause," and "if a law violates First Amendment rights there is no need to resort to the Equal Protection clause to redress the constitutional violation."   Hill v. City of Scranton, 411 F.3d 118, 125–26 (3d Cir. 2005) (citing Ronald Rotunda & John Nowak, 3 Treatise on Constitutional Law: Substance and Procedure § 18.40, at 796 (3d ed.1999) and Sherbert v. Verner, 374 U.S. 398, 410 (1963)); *see also* A.M. ex rel. McAllum v. Cash, 585 F.3d 214, 226 n.9 (5th Cir. 2009) (stating that it is generally unnecessary to analyze laws under Equal Protection when they are challenged on First Amendment grounds because the latter serves as the strongest protection of individual rights); Orin v. Barclay, 272 F.3d 1207, 1213 n.3 (9th Cir. 2001) (same).

Plaintiff also has not demonstrated that the physical characteristics of the various prayer mats and other religious items allowed to other inmates are sufficiently similar to the mat he sought.    In this regard, the court notes that, despite the presumptive allowance of some religious items described earlier, in certain instances restrictions on the size of those items are set out.    *See* Fla. Admin. Code R. 33-602.201(16)(c).    Plaintiff suggests that Muslim or Jewish inmates are allowed essentially the same types or lengths of prayer mats, but he states the case only vaguely, based on his general observations or impressions.    Absent are any sort of calculable specifics regarding the dimensions of the mats or the materials of which the mats are made.    And, as Defendants indicate, these specifics are not simply trifling as it is suggested that the length of the mat and its sturdiness could present a security concern that the mat might be used to compromise a perimeter fence at the institution (*see* ECF Nos. 61-4 at 2; 61-7 at 3).    Plaintiff's prayer mat was denied at least partly on this basis.    Without providing some sort of evidence that his mat is not significantly different from the other mats as far as size and strength, and that he poses no more risk of escape than other inmates allowed similar items, Plaintiff cannot establish he was similarly situated with other inmates who have been allowed religious items.

Third, Plaintiff has not established discriminatory intent. Plaintiff recounts details of his requests for the mat and the grievances he submitted, and he asserts that prison officials were slow or evasive regarding their decision on the mat—which they ultimately misplaced or lost. While Plaintiff may have established he was denied the mat, he has not established discriminatory intent, particularly considering the primary concern with the mat was its size. Because Plaintiff has not established he was similarly situated to those with whom he compares himself, and because he has not established discriminatory intent, Plaintiff's equal protection claim fails.

D.    On Exhaustion

One final matter, while not necessary to the outcome of this case, nonetheless remains a glaring point that warrants mention. It is that this entire matter could have been more easily resolved during the grievance process. One of the benefits of the prison grievance system, and the concomitant requirement that all prison claims be exhausted before filing suit, is to provide prisons with an opportunity to internally address inmate complaints before lawsuits are filed. *See, e.g.,* Porter v. Nussle, 534 U.S. 516, 524–25 (2002). Indeed, forthright attempts to resolve a grievance may well alleviate the need for a lawsuit.

It goes without saying that, if both parties to a grievance use the process in the spirit in which it was intended, the chances of a positive resolution are much greater. In this case in particular, where Plaintiff was not seeking the riches of a large monetary damage award but was simply requesting the issuance of a prayer mat, one would think there to be a sizable chance for a positive outcome.   And the chance is even greater when one considers that prison officials seemed to have had no objection to Plaintiff's use of the mat on religious grounds and, instead, were concerned about the type of mat it was.

One of the purposes of the grievance process is that, when properly administered and used, it serves to reduce the number of lawsuits filed in a court system that is already saturated with case filings.   Here, where the grievance process seemed to be saddled with delay and a certain amount of confusion, the matter might well have been amicably resolved with: greater detail in the specifications of what is and what is not an acceptable prayer mat; greater consultation with the various decision-makers prior to ordering the mat; greater collaboration on what to do after the mat in question was found unacceptable, or after the mat was lost; greater patience before advancing toward the higher stakes of a lawsuit; or, simply, greater

care in communication between the parties.   Each party should know where they gave short-shrift to the grievance process.

There can be no question that the First Amendment and Equal Protection issues that were raised in this case are important matters that courts like this one will vigilantly work to resolve, but in this case, these constitutional issues appear to be less the crux of the matter than the simple, practical problem of finding a prayer mat that all could agree on.   The court notes that because the parties were unable, and possibly unwilling, to find such accord at the prison, much more time and effort was expended on this federal lawsuit by all concerned.

For the aforementioned reasons, it is respectfully **RECOMMENDED**:

1.     That Defendants' Motion for  Summary Judgment (ECF No. 61) be **GRANTED.**

2.     That Plaintiff's Motion for Preliminary Injunction (ECF No. 68) and Motion to Compel (ECF No. 78) be **DENIED** in light of the recommended disposition of this case.

3.     That the clerk be directed to enter judgment in favor of Defendants and close the file.

At Pensacola, Florida, this <u>22nd</u> day of November 2019.


<u>/s/ *Elizabeth M. Timothy*</u>
**ELIZABETH M.   TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

     **Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.   <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>   A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**